Good morning, your honors. May it please the court, Kenneth M. Soil, our appellant. In this case, which is a federal habeas corpus in federal court because my client challenges the state court's application of federal law, the main issue is whether or not my client should have been reappointed counsel after he had been given his forerights to self-representation. His request to be reappointed counsel came prior to the commencement of trial, and the law indicates quite clearly that is the rare case in which reappointment of counsel will not occur. We do recognize an exception, or at least the Supreme Court has, has it not, for those requests that come literally in the middle of the trial. In this case, as I understand it, the jury was waiting out in the hall when he made the request. Well, your honor, the request came actually before the start of trial, and then the second... The jury was out in the hall, though, right? They may have been waiting out in the hall, your honor. So the trial is now imminent, and my question for you is, didn't the Supreme Court tell us that circumstances where the granting of, in this case, the reappointment of counsel would operate as a, an obstruction to an impending trial, that that is an exception to the rule that we would ordinarily simply reappoint the lawyer? Well, that might be an exception, your honor, but I think you need to look at the facts of this case through the eyes of my client. Well, why not, why shouldn't we look through the eyes of the Supreme Court in deciding whether or not the California appellate courts unreasonably applied Supreme Court authority to your client's request? Well, I think that it was unreasonable because there was no real reason not to give a short continuance to reappoint counsel, and then that gets into the second issue of whether or not my client could have had Mr. Bisnow forced upon my client over his objection, which... ...continued request for discharging counsel, reappointing counsel, amounts to, as the Superior Court judge put it, being whipsawed by the defendant, that that is an appropriate point at which the trial judge can simply say, enough game playing, the trial is going to commence now. Well, your honor, there has to be a showing of bad faith or manipulation. Didn't the judge make that finding? I don't believe he... He said I'm being whipsawed. I think he said that, but I don't think there was really any finding that my client was acting in bad faith or trying to manipulate the court. Here's a guy who was unhappy with... He's asking us to make a factual determination that is adverse to that made by the California Court of Appeal... No, your honor. ...and found that the trial judge was justified in refusing the reappointment? Well, your honor, I don't think that the trial court or the court of appeal made that finding that my client was acting in bad faith. This was a man looking at a life sentence. Rightly or wrongly, he was unhappy with counsel. There was not sufficient margin of ground to remove counsel. My client was then put in the position of either taking counsel he was unhappy with or representing himself. He did equivocate somewhat which way he was going to go. Finally, he decided he would represent himself, although he indicated he was trepidatious about that. He was then denied his right to access to the law library. He came into the court. He told the court, you know, I can't prepare... The trial judge offered him his old lawyer back, and he refused, right? No, he didn't offer him his old lawyer back, and that's part of the problem. Well, I thought he did twice. Well, at that stage... Okay, that's why I say you have to break it down into two sections. First, does he have the right to reappointment of counsel? I believe he did. A new counsel? No, no, not new counsel. Whoever the... He refused it. Well, but that's not up to... Once the establishment of the right to counsel reattaches, it's not up to him to refuse or not refuse. Are we now talking about standby counsel? No. Are we talking about reappointment of... No, I'm talking about reappointment of Mr. Bisnow. The judge, once he's invoked his forever rights, has to cram his old counsel down his throat, even though he says he doesn't want it. Yes. If the right to reappointment of counsel attaches, he then has to take Mr. Bisnow, whether he wants him or not. Mr. Stern, let me interrupt for just a second. Your contention is that the judge, over Mr. Soil's objection, should have assigned Attorney Bisnow back to the defense. What would have happened given Mr. Soil's constitutional right to represent himself if, in fact, at the end of the day, with Mr. Bisnow's help, he was convicted? Would you be here arguing that Mr. Soil had a right to represent himself, that right was tread upon, and for that reason, his conviction should be overturned? No, Your Honor, because both Ms. Castle and Feretta have said that even in light of the right to self-representation, where the right no longer exists, that right does not exist. And here, I believe it did not exist. And the Court, I think what would be brought out if this case is reversed and returned for an evidentiary hearing on habeas corpus, Mr. Bisnow indicated to me he was ready to step right back into the case and try the case. But your client didn't want him. But that doesn't – once the right to counsel attaches and there's no longer a Feretta right, whether my client wants him or not doesn't matter. He has no right to select who his counsel is going to be. And I understand the kind of irony of it, but once the right attaches, my client – if the right is there and there's no Feretta right and there's a right to counsel, absent a conflict of interest, Mr. Bisnow could have been forced upon my client, whether he says I don't want him or not. And again, this whole idea of lip-sawing, I'd like to bring in briefly the notion of the fact the Court wouldn't give the continuance. Now, I see that as being a sub-issue here. Reflecting upon the totality of the circumstances, the Court – the trial court really gave no reason not to give my client a continuance other than the fact the Court said I don't want to. This was a case in which all the witnesses were law enforcement officers. There's no showing that anybody would have been prejudiced by a short continuance, in particular the people would not have been prejudiced. What about the jurors who have already been selected for the case, who are ready to perform their service, who are waiting out in the hall? Well, you know, I think that's a minor consideration. With the fact that my client's looking at a life sentence and having to represent himself, that he's not qualified or prepared to do. Of course, you know, jurors are important people, and their feelings and inconvenience should be considered. But I think in terms of the right to counsel, the right to counsel certainly overweighs some inconvenience to jurors. If we accept your argument, we are essentially undercutting the language in the Supreme Court cases that say that there is not an unlimited right to switch counsel. That at some point when the trial is imminent, that the interests of society in having its speedy trial outweigh the defendant's desire for additional time for whatever reason. And if we adopt the rule that you're asking us to adopt, we are essentially going against what the Supreme Court has told us. And I'm still wondering how it was unreasonable for the California Court of Appeal to apply existing Supreme Court authority that says that it is not a constitutional violation on the eve of trial to proceed as this trial judge proceeded. Well, I think even under California law, California's own Supreme Court case of People v. Clark in this Court's rulings, unless there's a real compelling interest in forcing that trial to go forward, then there is a denial of the right to trial and right to counsel. Here there was no – I mean, the jurors are – The California Supreme Court had an opportunity to address that issue and apparently chose not to do so. Was this a postcard denial of review? Yeah. All right. So back to my question. How is it unreasonable to apply existing Supreme Court authority in this case to tell Mr. Soil, bring in the jury. We're starting the trial right now. It's unreasonable because there was no reason not to give him back his attorney, not to give him – there was no prejudice shown to anybody. And the fact of the matter is it's the rare case in which there's – the reassertion of right to counsel does not exist. The – there is no showing of bad faith or – and manipulating the court. My client equivocated. He changed his mind, sure, but he's a man looking at spending the rest of his life in prison and being put between a rock and a hard place. Thank you very much. Thank you. Thank you, Your Honor, and may it please the Court. David Glassman, Deputy Attorney General, for the respondent. Under any standard of review, much less the applicable AEDPA standard, this case should be affirmed. There is no discussion, and none today, of any applicable Supreme Court precedent that really has anything whatever to do with the extreme and transparent circumstances of this case in which there was an obvious last-ditch attempt to manipulate these proceedings. As far as the – Mr. Glassman, can I interrupt for just a second? If we adopt the – if this Court were to adopt the rule as advocated by Mr. Sewell, what would be left of the constitutional right of self-representation in a context like this? Well, Your Honor, I'm not at all clear on what rule is being requested here. It's certainly not a rule that defines support of Supreme Court case law. The rule essentially is that looking at a record in which there is a constant attempt by this defendant to frustrate the process, the rule is that at the end of the day, we reward that defendant. I don't understand at all how that rule would comport with any of the limitations or any of the characteristics, for that matter, of FREDA that have been recognized either by the Supreme Court or even by this Court. I think what's upon us is that we – that the Court should have, notwithstanding Mr. Sewell's objection, should have forced Mr. – his former counsel on him through the trial. If that's the rule proposed, there are two answers to that, Your Honor. The first is the scenario would be exactly as you described it in your earlier question of petitioner's counsel, namely, notwithstanding a gainsaying statement, of course we'd be here with the claim that counsel was forced on an unwilling defendant who had validly asserted his right to self-representation, and that exactly what this defendant was trying to avoid was representation by Mr. Bisnow, and that is ironically exactly what he got under the rule that he proposes. And ironically, at the end of the day, namely post-trial, what happens? The defendant reverses himself again, agrees to Bisnow's representation for post-trial proceedings. Bisnow advocates on behalf of the defendant, and he fires him again. As far as the claim that there was not a factual finding in this regard, I want to make a brief point. Referring to material that appears in the underlying trial record at Reportage Transcript 432, which was quoted by the district court, I'd like the following statement the trial judge made when this whipsawing process began. And by the way, I should note that before this charade began, there was from the time of August, or rather April until August of 1977, no fewer than 15 appearances at which Bisnow represented the defendant. No Feretta motion, no Marsden motion. And then this begins, and the court ultimately rules as follows. It is my belief that at this point in time, Tishner is my insertion there, may not whipsaw the system, claiming conflicting constitutional rights. That is, of course, the right to self-represent. And in doing so, obtain for himself the continuance that he seems to want, or whatever he wants to do, to try to upset the system. We have set aside this time to try this case. It is my intention to go forward. Obviously, that's a factual finding. That's a factual finding confirmed by the State Appellate Court and by the magistrate's report. And I would add, finally, that in what is somewhat unusual, at least in my experience, at page 392 of the excerpts, we have the district court not simply accepting the magistrate's recommendation, but adding the district court's voice to that of every judge that has evaluated this case to point out the egregiousness and, as I said before, the transparency of this attempt to manipulate the process. A whipsaw is a factual finding. It's a finding of an improper motive, and it is amply confirmed by the circumstances of this case. Thank you very much. Thank you, counsel, for the argument just made, and the matter just argued will be submitted. The next matter on the argument calendar is Spangler v. Abercrombie v. Fitch. Good morning. Good morning, Your Honors. May it please the Court. My name is Brent Blakely. I'm with Thomas Brackey. We're the attorneys for the plaintiffs in this case. The majority of the grounds for the district court's grant of summary and judgment in this case have already been overturned in this Court's ruling in Downing v. Abercrombie v. Fitch. In that related and, indeed, identical case, which involved seven of the other surfers in the photograph in the Abercrombie v. Fitch quarterly catalog, this Court held that the First Amendment did not act as a defense for the misappropriation, that California law applies, that plaintiffs' claims are not preempted by the Copyright Act, and that tribal issues, in fact, existed with regard to the Lanham Act claims. So unless this Court has any questions, I'm going to focus my attention on the statute of limitations arguments. May I ask you a clarifying question? Yes. Is there a right of privacy claim that survives, or is the claim that's really at issue, the right of publicity slash misappropriation commercial character of these folks? It's a publicity claim, Your Honor. Yes. All right. Now, that being so, we've already said in Cassano that the statute of limitations is a two-year statute. Correct, Your Honor. So what else is left? You know. In your view, nothing, right? In my view, nothing, Your Honor. I mean, this is, you know, and this goes to, well, Your Honor, this Court's already held in Cassano that it's a two-year statute. And that's because, as opposed to a personal right, which is like a defamation or a privacy claim, the right to publicity involves cognizable property rights, the right to control one's image for commercial uses. And therefore, that falls under Code of Procedure 339. And this Court's already spoken to that issue in Cassano. Also, this Court has already spoken to the issue with regard to the Lanham Act claim, holding that it's a three-year statute of limitations under 338 subsection D, I believe. And also, even though there isn't any case law directly on this, I believe that the statutory claim under California Civil Code 3344 is actually a three-year statute because it's an action upon liability created by statute under CCP 338A. So I think, at the minimum, it's a two-year statute of limitations, but I think it's all actually a three-year statute of limitations under the California Statutory Code because it's established a liability established by statute. I mean, I'll just briefly touch on a couple of their arguments. The uniform publication, single uniform publication argument, that's an accrual statute, Your Honors. It does not establish a statute of limitations. It simply states that when you've got a mass publication, you know, 50,000, like the example of these 50,000 copies in 40 states, you don't get 50,000 lawsuits in 40 states. You get one lawsuit in one of those states. But you can raise a number of claims in that lawsuit. It's not just, you're not just stuck to a, you know, a privacy claim or a publicity claim or a Lanham Act claim. Although you would concede that we start counting from the date of the first publication, would you not? I don't concede on that here with regard to, again, the only issue that this really goes towards is the privacy claim because the other claims are within the statute. But with regard to the privacy claim, I think you've got the rule of discovery, which is you just told me you didn't have one. That's what I thought I heard, too. Well, the first thing I asked you is whether there was still a surviving right of privacy claim or whether the claim at issue here is a publicity slash misappropriation. I believe there is a, there was a privacy claim alleged, Your Honor. I know there was one alleged. My question is, does it survive or are we simply talking about a right of publicity claim? And you answered me before very clearly that this is a right of publicity claim. That's what it turns on. That's the gravamen of your privacy issue. That is correct, Your Honor. If you have a strict, flat-out right of privacy claim, that's a different statute of limitations and you have a problem with it. Correct, Your Honor. I think the gravamen of this case is a... Can you stick with what you said or are you going to change what you said? Well, I was just sticking to the facts. I mean, basically, we alleged a privacy claim, but we also alleged a publicity claim, which is an entirely separate claim. Yes, I know that. And the thrust, this case is a publicity case. So, yes, Your Honor. I'm sticking with what I said. All right. So we don't need to worry about it. So let's not worry about that. This is a publicity case. Basically, the Single Publication Act does not create a one-year statute of limitations. It just basically is an accrual statute. Also, this whole First Amendment argument, creating a one-year statute, is enough. There's no basis for it, Your Honor. The First Amendment is not a statute of limitations. And finally, and very important, Your Honors, I think it would be very conservative to state that the district court would have a substantial difficulty in putting his previously expressed opinions and rulings out of his mind in this case. This case has been going on for three-and-a-half years now. The problem you have with that argument is that whatever the trial judge may think, it's directed to the other plaintiffs. You don't have any evidence yet that he holds the same views with regard to your particular clients. Well, I represent all the clients in both cases. I understand that. Maybe he doesn't like you, but... And I'm not going to dispute that. But, I mean, don't you ignore... Under our case law, don't we have to find that it is actual prejudice that has been displayed by the trial judge in this case before we can remand it with instructions to assign it to a different judge? Well, this case was originally assigned, when I originally filed it, to a different judge. I understand that. Judge Rill transferred it to himself, held it, and then threw it out for the same reasons as the other case. The other case is it's kind of in limbo right now, waiting for this decision to come down, at which time they're going to be consolidated. You're asking us to apply a loose version of the doctrine of transferred intent. Is that it? Your Honor, we're going to be back up here in a year-and-a-half. There's no doubt in my mind. You know, my clients are in their 60s and 70s, and we can't keep on coming back up to the Ninth Circuit every other year, even though I love coming here. You know, it's... From what's happened in the last two years, as I pointed out in the brief, we're going to be back. Thank you, Your Honor. Unless you have any questions. Good morning. May it please the Court. My name is Lincoln Van Lowe with Leopold, Petrich, and Smith, and I represent Abercrombie & Fitch. I would like to take the plaintiff's arguments one by one, perhaps not in the order that you took them because I think they're all directly, can be directly addressed. As for his assertion that the Section 3344 claim has a three-year statute of limitations, that assertion is directly refuted by a case he cites in his reply brief, the case Barton v. United Motors, New United Motors. In that case, there was an argument that a cause of action that was under a statute fell under this provision of Section 338A. But the Court there said in order for a statutory right to apply, this rule to apply, you need two things. One, the cause of action has to be embodied in a statute. And, two, it has to be of a type that did not exist at common law. This rule will not apply if you've got a statutory action that existed at common law. Here there's no dispute that the right of publicity existed at common law. In fact, you've got three such claims. You've got two common law right of publicity claims. So that statute does not apply to make the Section 3344 claim three years. As for the Lanham Act claim being three years. It doesn't matter, does it, as long as you've got a two-year sanction? I'm going to get to that, the Cusano case, yes. I will get to that. But I'm going to argue to you that the Cusano case actually is incorrect in holding that it's two years. But that's what it held. Well, then I'll turn to Cusano now. I'll turn to Cusano now to address that. In Cusano, it does not appear as if the parties were very carefully briefing this issue. If you look at Cusano, you had You were here a minute ago. It's the same thing that we were discussing in a prior case. If this Court has held something, whether it's right or wrong or well-reasoned or poorly or not at all, this panel is bound by it, isn't it? I think, Your Honor, it's not bound by it if the distinguishing facts of that case are pointed out. Well, sure. I agree with that. And the distinguishing facts of that case are in Cusano, you had conduct that was beyond two years. And it appears the parties in Cusano, if you look at it, were essentially agreeing that it was at least two years. And the Court didn't have to look at the issue very closely because the conduct was far beyond the two years. Here we have parties very carefully and very thoroughly briefing the issue of whether one or two years applies. And there's a particular California authority directly on point as to what statute of limitations applies there. And that's why the Cusano case didn't correctly analyze this issue. And the reason for that is simple. And, in fact, it is, again, a case cited by the plaintiffs in their brief. They cite the Barton case. In Barton, the Court said that to determine what statute of limitation applies, whether it's the two year for a property right or the one year for a personal right, you look at the right sued upon. Wait a second, counsel. Am I missing something here? I'm looking at Cusano beginning, let's see, at page 950 of 264F3rd. And our esteemed panel says the statute of limitations for infringement of the right of publicity in California is two years. And then the panel goes on to say Cusano did not commence the present action until July 1997, well after the two year statute of limitations had run. If you look at Cusano. Why doesn't that establish for all time the Ninth Circuit recognition of a two year statute of limitation for this type of claim? Because if you look at Cusano, you see that Cusano relies on one authority for that proposition. So what? Suppose it relied on nothing. I read that rule. That is the holding of Cusano. Why are we not bound by what a prior panel has ruled is the law of the court? Well, one of the other reasons the Court's not bound by Cusano is because of the issue of having claims that are asserted in a mass publication. So you have the issue of the Uniform Publication Act applying and the strict analysis applying, which says that if you have claims that all relate to some harm that arises out of a medium of mass communication, then all of those torts will be subject to a one year statute of limitations. How do you get to one year? Isn't it subject to whatever the default statute of limitations is? That is the lowest common denominator statute of limitations. Well, and that I think is the issue here, Your Honor, is what is the applicable California statute? It's two years. And in making that determination, the Ninth Circuit in Cusano relies solely on dicta and a dissenting in Lugosi, when Lugosi itself, the majority opinion, said exactly the opposite. The majority opinion in Lugosi said that a right of publicity claim, whatever you want to call it, right of privacy or publicity, is a personal right. And California law is perfectly clear that when you are asserting damages based on a personal right, the one year statute of limitations for personal injury applies. So Cusano directly misapplied the controlling California statute of limitations case law in the Lugosi decision. That court, again, in Lugosi, the court very specifically said, quote, we hold that the right to exploit name and likeness is personal. In the Barton case. You are now arguing to us that we have the power to simply declare that the Cusano panel was wrong, that we don't agree with the reasoning behind their enunciation of the rule, and therefore, we will not follow it. I think this panel has the power to say to the Cusano panel that, with all due respect, Cusano panel, you did not have this issue briefed as thoroughly before you and didn't have certain cases and issues presented to you and had you looked at those cases and issues, your conclusion would have been, you would have realized your conclusion was incorrect. Would it be incorrect to say that today, under California law of weights and comedy three, that the right of publicity when it involves taking of a person's persona for advertising purposes is not a property interest? Yes. I would think it would be wrong to ultimately conclude for purposes of statute of limitation analysis that the right of publicity is solely a property right. I mean, for statute of limitations purposes and for purposes of stating a claim. I mean, it's characterizing what the injury is. And the injury, when a picture of these folks in their surfing outfits was stolen, to put in an advertising piece, isn't that a commercial use, which is an invasion of property? No. What the Barton case said was, in Barton you had a wrongful termination case and we didn't know what the statute applies. So the court said, well, look to the nature of the action. Is it personal or is it property? And there the plaintiff said, it's my job, it's my property, because he wanted a longer statute. And the court said, no, your employment is personal to you. When someone says you've taken my job, you've taken part of my personhood. The same analysis is here. When you argue that the right of publicity has been violated, you're arguing that your person has been taken. And in fact, plaintiff's allegations, and that's what's important to look at here, is their particular claims. Every one of their claims argues that the conduct subjected them to, quote, cruel and unjust hardship in their personal life. Their Lanham Act claim says their reputations were harmed. These are not plaintiffs who are saying, ah, you know, you put my name on a shoe, give me some money. These are plaintiffs who are saying, you put my face and my name in a publication that I don't agree with, and it offended me, and it caused me distress, and it caused me hardship. But you did so thereby inferring that I embraced these products, that I endorsed the public going out and selling them. And I'm entitled to compensation if you're going to use my endorsement for that purpose. Yes, but that question begs the question, I think. And because certainly there is a false ---- It establishes a different cause of action than a personal privacy claim. Well, there is a distinction between the more privacy-oriented right of publicity claim and the more publicity-oriented. And it does typically tend to stem from the damages. One is a private person saying, I didn't want to be associated with toilet paper, I'm hurt. The other is, I'm Michael Jordan, I get paid for this. But regardless of that, the NYSERC has recognized over and over that even if it's Michael Jordan, I get paid for this, there still could be an emotional distress, a personal aspect to it in any of those claims, whatever you assert. And that's the key under Barton and the other cases. Is this a personal nature? And ultimately, when you say you've used me to endorse a product without my permission, you are in a sense saying you've prostituted me. You've misabused me. I didn't want to be associated with that. So you've hurt me, my personal feelings, by doing that. You've hurt me or you've deprived me of income that I would otherwise have earned from the endorsement. You have done, perhaps in a particular case, both. And under particular circumstances, it might only solely be an economic interest. But we're not here under theoretical circumstances. We're here under these circumstances in which the plaintiffs consistently argue that they were subjected to cruel and unjust hardships to their personal life. They have made this a personal claim. And when they make it a personal claim under Barton, under Lugosi, the controlling authority, then if it's personal, it's a one-year statute of limitations. I had one other thing that they had mentioned that I wanted to address, that I wanted a second to address, and that was that the discovery rule, I think you're right, Judge Tallman, clearly applies here. Their one argument they've made about the discovery rule is that they had a Hawaiian plaintiff and there wasn't publications in Hawaii. Well, the court in Flurry and McGinnis specifically rejected that argument. And as for the comments about Judge Reel, I agree with your comments. He wasn't prejudiced against these plaintiffs. Moreover, the other plaintiffs went to a trial for four days and then a mistrial was called because of the plaintiff's conduct. So Judge Reel was more than ready to submit this to a jury. Thank you, Your Honors. All right. Thank you, Mr. Whiteley. Anything else? Not unless Your Honors have any questions. I think not. Thank you both for your argument. The matter just argued will be submitted. We'll take a brief recess before hearing the last two matters on calendar. Thank you.
judges: Rymer, Tallman, Leighton